UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FDS FINANCIAL, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. CIV-25-1123-R |
| ) | |
| **FEDERAL DEPOSIT** ) | |
| **INSURANCE CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

Before the Court is the United States of America's Motion to Intervene and Stay [Doc. No. 9]. Plaintiff FDS Financial, LLC responded [Doc. No. 16]. Oral arguments on the matter were presented on December 11, 2025, and the matter is now at issue.

## BACKGROUND

The facts as alleged are as follows: In September of 2024, the First National Bank of Lindsay, Oklahoma received word from its regulatory authority, the Office of the Comptroller of the Currency, that an injection of between $3.5 and $4.5 million to the Bank would be needed to prevent the Bank's closure [Doc. No. 1, ¶ 5]. Ownership of the Bank set up FDS Financial, LLC to inject the necessary funds. *Id.* ¶ 6. The OCC approved the injection of $4 million by FDS into the Bank, in exchange for which the Bank would assign certain classified loans and written off overdrafts to FDS. *Id.* ¶¶ 10-11. A Loan Purchase and Assignment and Assumption of Loan Documents was executed by and between the Bank and FDS. *Id.* ¶ 14. FDS borrowed the $4 million from another bank and injected it into the Lindsay Bank. *Id.* ¶ 15.

1

In October of 2024, the Bank failed and FDIC became its Receiver. *Id.* ¶¶ 17, 21. In November of 2024, FDS received documents from the FDIC indicating that some funds had been paid toward FDS's assigned loans and overdrafts. *Id.* ¶¶ 18-19. FDS demanded payment of those funds in a Claim to the FDIC in the amount of $163,180.44. *Id.* ¶ 22. In July of 2025, the FDIC disallowed the Claim, stating it had not been proven to its satisfaction pursuant to 12 U.S.C. § 1821(d)(5)(D)(i). *Id.* ¶¶ 26-28. However, FDS alleges the FDIC and/or the Bank had already tendered $7,765.38 to FDS pursuant to the payment of the loans and written off overdrafts. *Id.* ¶ 29. FDS thereafter brought this lawsuit objecting to the disallowance of the Claim.

The United States of America moves to intervene under Rule 24 of the Federal Rules of Civil Procedure and to stay the proceedings and discovery in the case until the conclusion of an ongoing federal criminal proceeding involving the Bank's failure. Doc. No. 9. Neither the FDIC nor FDS oppose the Government's request to intervene. Therefore, the Government's request to intervene is GRANTED.

However, FDS opposes the Government's request to stay. "The Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights." *Creative Consumer Concepts., Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (citations omitted). The Court may exercise its discretion to "defer[] civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seem[] to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970). "When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth

Amendment rights are implicated." *Creative Consumer*, 563 F.3d at 1080. Civil proceedings may also be stayed "for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution." *Id.* (citation omitted).

> In determining whether a stay is appropriate, courts often balance the following six factors: (1) the extent to which issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously versus the prejudice to plaintiff caused by the delay; (4) the private interests of, and burden on, the defendant; (5) the interests of the Court; and (6) the public's interest.

*Obispo v. Ishkiret's Grp., LLC*, No. CIV-24-889-D, 2024 WL 5056643, at *3 (W.D. Okla. Dec. 10, 2024) (citing *Graham for Est. of Huff v. Garfield Cnty. Det. Ctr.*, No. CIV-17-634-M, 2018 WL 4035971, at *2 (W.D. Okla. Aug. 23, 2018)).

The Government argues most of the factors favor a stay. Factor one (the most important factor) and factor two deal with the overlap between the civil and criminal matters and the status of the criminal matter, including whether the defendant has been indicted. "Generally, 'the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.'" *Id.* (quoting *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980)). "This is so because '[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination.'" *Id.* (citing *Dresser*, 628 F.2d at 1376). "A stay is most appropriate after charges have been filed because 'the likelihood that a defendant may make incriminating statements is greatest after an

3

indictment has issued,' and 'the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved . . . .'" *Id.* at *4 (quoting *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. May 25, 1995)). *See also In re CFS-Related Secs. Fraud Litig.*, 256 F. Supp. 2d 1227, 1238 (N.D. Okla. Mar. 10, 2003).

The Government contends there is significant overlap between this civil matter involving the Bank's failure and the Government's criminal investigation into the Bank's failure. The Government has also indicated that an indictment has been filed against Mr. Danny W. Seibel, the Bank's former President and CEO [Doc. Nos. 22, 22-1] and hinted more indictments could be forthcoming. There is a clear overlap between these cases, and though Mr. Seibel is not a defendant in this action, the Government has represented that proof in the criminal case will require testimony and documents from key players in this case, such as the OCC, FDIC, and the owners of FDS.

The third factor deals with the private interest of the plaintiff in proceeding expeditiously versus the prejudice a delay could cause the plaintiff. FDS argues a stay will either delay or frustrate entirely its ability to collect on its assigned loans and overdrafts. FDS borrowed the $4 million it injected into the Lindsay Bank from another bank and now needs to begin repaying that loan. It intends to do so, at least in part, by collecting upon the loans and overdrafts assigned to it by the Bank prior to its failure. To collect those loans and overdrafts, FDS argues it requires access to loan documents (e.g., possible signed promissory notes and mortgage documents) that it alleges the FDIC possesses and will not provide. FDS contends it needs those documents to initiate state court proceedings against

4

those who owe money on the loans and overdrafts. Staying this proceeding and delaying FDS's ability to obtain the documents from the FDIC might lead to FDS's claims being barred by relevant limitations periods. This will prejudice FDS by frustrating its ability to repay its own debts.

For factor four, "[t]he foregoing interests of the Plaintiff[] must be balanced against . . . the private interests of and burden on the Defendant." *In re CFS*, 256 F. Supp. 2d at 1239. Defendant FDIC does not oppose the stay, and FDS argues its risk of prejudice outweighs that of the FDIC or the Government because of the potential for limitations periods thwarting FDS's ability to collect its debts.

Courts often find a plaintiff's prejudice outweighed by potential prejudice a defendant could face if forced to choose between fulfilling his legal obligations in civil discovery or asserting his Fifth Amendment privilege. *See id.*; *Obispo*, 2024 WL 5056643, at *4. But no defendant in this case is a defendant in a criminal proceeding. *Compare with Urrutia v. Montoya*, No. 16-00025 MCA/SCY, 2016 WL 9777168, at *2 (D.N.M. June 29, 2016) (granting only a brief and limited stay of discovery with respect to a party who was the defendant in both the at-issue civil proceeding and a parallel criminal proceeding).

The fifth and sixth factors are the interests of the Court and the public.

> "The Court has a strong interest in keeping litigation moving to conclusion without unnecessary delay." *In re CFS*, 256 F. Supp. 2d at 1241. On the other hand, "resolution of the criminal case may (1) increase the possibility of settlement of the civil case, and (2) 'may reduce the scope of discovery in the civil case [as] the evidence gathered during the criminal prosecution can later be used in the civil action.'" *Hilda M. v. Brown*, No. 10-cv-02495-PAB-KMT, 2010 WL 5313755, at *6 (D. Colo. Dec. 20, 2010) (quoting *Transworld Mech., Inc.*, 886 F. Supp. at 1140).

5

*Obispo*, 2024 WL 5056643, at *4. Other interests include "promot[ing] comity between civil and criminal courts . . . and adequately protect[ing] against an improper spill-over of information, whether intentional or merely incidental, between the two proceedings." *Graham*, 2018 WL 4035971, at *3.

"When determining the public's interest, it is normally a question of what interest the United States Attorney has in the request for a stay." *In re CFS*, 256 F. Supp. 2d at 1242. Here, the Government represents that it has a strong law enforcement interest in protecting the integrity of the criminal proceeding and preventing the civil discovery process from impairing or influencing the evidence or testimony expected to be offered in the criminal case. The public also has a general interest in the matter's efficient and just resolution. *Obispo*, 2024 WL 5056643, at *4 (citation omitted).

After considering the parties' briefing and oral arguments, the Court finds the factors weigh in favor of a stay in all but one respect. FDS has represented that it requires loan documents in the FDIC's possession to bring state court actions to collect upon FDS's assigned loans and overdrafts before relevant limitations periods expire. A delay in this matter could seriously prejudice FDS by frustrating its ability to repay its own debts. Furthermore, no party to this case is a defendant in any related criminal case. Additionally, the Government represented at oral arguments that it had no objection to FDS moving forward on its claims in state court actions, but objects to the production of the loan documents that would allow FDS to file those state court actions.

The Court cannot discern any prejudice to the Government in the FDIC producing the loan documents and therefore finds the balance of factors tilts slightly in favor of FDS

on this one point. The Court will therefore tailor the stay accordingly. *See Urrutia*, 2016 WL 9777168, at *4 (finding a broad, open-ended stay of discovery unwarranted and limiting stay of discovery to the defendant, who was also a defendant in a parallel criminal proceeding).

At oral arguments, FDS represented it would not object to a stay if allowed to move forward with a limited Rule 34 Request for Production of the documents held by the FDIC reflecting debts owed to FDS under the loans and overdrafts the Bank assigned it. *See* FED. R. CIV. P. 34. Furthermore, FDS represented that if allowed to request the loan documents, it will cooperate with the Government to ensure its debt-collection actions do not infringe upon the Government's criminal action(s). Specifically, FDS indicated that it would be willing to (1) work with the Government should FDS bring suit against individuals who are targets of the Government's investigations related to this matter and (2) file state court actions to stop the limitations periods from running but wait the full 180 days to serve process on the parties. Based on these assurances from FDS, the Court will allow it to proceed with a limited Rule 34 Request for Production as FDS proposed at oral arguments.

Accordingly, the Government's Motion to Intervene and Stay is PARTIALLY GRANTED. The Government is permitted to intervene in this action. Excepting the allowance for FDS's limited Rule 34 Request for Production, proceedings in the above-captioned case are STAYED until June 15, 2026, by which date the parties are directed to file a status report regarding Mr. Seibel's criminal case and any other relevant criminal cases that might bear upon the stay in this matter. If the criminal case against Mr. Seibel is

resolved before June 15, 2026, the United States is directed to advise the Court within ten days of the resolution.

    IT IS SO ORDERED this 12th day of December, 2025.

*[signature: David L. Russell]*

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE